IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

BDD GROUP, LLC.,

        Plaintiff,

                                       Case No. 24-10035
                                       Hon. Judith E. Levy

v.

CRAVE FRANCHISING, LLC,
SAMANTHA RINCIONE,
and SALAVATORE RINCIONE,

        Defendants.

| | |
|---|---|
| HAMMOUD, DAKHLALLAH & ASSOCIATES, PLLC | STARR, BUTLER & STONER, PLLC |
| Kassem M. Dakhlallah (P70842) | Scott D. Stoner (P55653) |
| Kassem H. Amine (P86440) | Daniel C. Waslawski (P78037) |
| Basem M. Younis (P85962) | Zeth D. Hearld (P79725) |
| Attorneys for Plaintiff | Attorneys for Defendants |
| 6050 Greenfield Rd., Ste 201 | 20700 Civic Center Dr., Ste. 290 |
| Dearborn, MI 48126 | Southfield, MI 48076 |
| (313) 551-3038 | (248) 864-4935 |
| kd@hdalawgroup.com | sstoner@starrbutler.com |
| by@hdalawgroup.com | dwaslawski@starrbutler.com |
| ka@hdalawgroup.com | zhearld@starrbutler.com |

## DEFENDANT'S MOTION TO DISMISS AND COMPEL ARBITRATION

     Defendant, Crave Franchising, LLC ("Crave Franchising"), through its attorneys, Starr, Butler & Stoner, PLLC, respectfully moves this Court to dismiss Plaintiff's Complaint with prejudice and to compel arbitration.

Pursuant to Local Rule 7(1)(a), counsel for Crave sought concurrence from Plaintiff as to the requested relief and legal basis of the instant motion on February 1, 2024. Concurrence was not obtained.

For the reasons stated in the attached brief, Crave Franchising respectfully requests that this Court dismiss Plaintiff's Complaint with prejudice and compel the arbitration of this matter. Crave Franchising further requests an award of costs, attorney fees, and such other relief as this Court deems just and equitable.

Respectfully submitted,

STARR, BUTLER & STONER, PLLC

By: /s/ Daniel C. Waslawski
      Scott D. Stoner (P55653)
      Daniel C. Waslawski (P78037)
      Zeth D. Hearld (P79725)
      Attorneys for Defendants
      20700 Civic Center Dr., Ste. 290
      Southfield, MI  48076
      (248) 864-4935
      sstoner@starrbutler.com
      dwaslawski@starrbutler.com
      zhearld@starrbutler.com

Dated: February 7, 2024

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

BDD GROUP, LLC.,

      Plaintiff,

v.

CRAVE FRANCHISING, LLC,
SAMANTHA RINCIONE,
and SALAVATORE RINCIONE,

      Defendants.

Case No. 24-10035
Hon. Judith E. Levy

| HAMMOUD, DAKHLALLAH & ASSOCIATES, PLLC | STARR, BUTLER & STONER, PLLC |
|---|---|
| Kassem M. Dakhlallah (P70842) | Scott D. Stoner (P55653) |
| Kassem H. Amine (P86440) | Daniel C. Waslawski (P78037) |
| Basem M. Younis (P85962) | Zeth D. Hearld (P79725) |
| Attorneys for Plaintiff | Attorneys for Defendants |
| 6050 Greenfield Rd., Ste 201 | 20700 Civic Center Dr., Ste. 290 |
| Dearborn, MI 48126 | Southfield, MI 48076 |
| (313) 551-3038 | (248) 864-4935 |
| kd@hdalawgroup.com | sstoner@starrbutler.com |
| by@hdalawgroup.com | dwaslawski@starrbutler.com |
| ka@hdalawgroup.com | zhearld@starrbutler.com |

## BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND COMPEL ARBITRATION

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................. ii

STATEMENT OF ISSUES PRESENTED................................................vi

MOST APPROPRIATE AUTHORITY FOR THE RELIEF SOUGHT............... vii

I.      INTRODUCTION ........................................................................1

II.     FACTUAL BACKGROUND..........................................................2

III.    LEGAL STANDARD ...................................................................7

IV.     LAW AND ARGUMENT...............................................................8

        A.    The Arbitration Provision is Valid Under the Federal Arbitration
              Act .........................................................................................8

        B.    The FAA Requires Enforcement of the Arbitration Clause................10

        C.    State Law Favors Arbitration ...............................................13

              1.    Delaware Law Favors the Enforcement of the Arbitration
                    Clause.................................................................................13

              2.    Michigan Law Favors the Enforcement of the Arbitration
                    Clause...................................................................................17

              3.    Any Argument that MFIL Precludes Arbitration of this
                    Lawsuit Is Without Merit.......................................... 19

        D.    This Court Should Dismiss Plaintiff's Complaint ............................ 21

V.      CONCLUSION............................................................................22

# TABLE OF AUTHORITIES

## Cases:

*Altobelli v Hartmann*,
499 Mich 284, 295; 884 N.W.2d 537, 542 (2016) ..................................................17

*American Express Co. v. Italian Colors Rest*,
570 U.S. 228, 233, 133 S. Ct. 2304, 2309, 186 L. Ed. 2d 417 (2013).....................9

*Amini v. Oberlin*,
259 F.3d 493, 502 (6th Cir. 2001) ...........................................................................8

*AT&T Techs. v. Communications Workers of Am.*,
475 U.S. 643, 649 (1986).......................................................................................10

*Bayati v Bayati*,
264 Mich App 595, 599; 691 NW2d 812, 814-15 (2004) ......................................17

*Binder v. Med. Shoppe Int'l*,
No. 09-14046, 2010 WL 2854308, at *6 (E.D. Mich. July 20, 2010)....................20

*Davis v LaFontaine Motors, Inc*,
271 Mich App 68, 73; 719 NW2d 890 (2006)........................................................17

*Fairstead Cap. Mgmt. LLC v. Blodgett*,
288 A.3d 729, 750 (Del. Ch. 2023) ........................................................................15

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).................................15

*Flint Warm Air Supply Co. v. York Int'l Corp.*,
115 F. Supp. 2d 820, 824 (E.D. Mich. 2000)........................................10, 11, 19, 20

*Fromm v MEEMIC Ins Co*,
264 Mich App 302, 306; 690 NW2d 528, 531 (2004)............................................17

*Great Earth Companies, Inc. v. Simons*,
288 F.3d 878, 889 (6th Cir. 2002) ....................................................................8, 13

*Green v. Ameritech Corp.*,
200 F.3d 967, 973 (6th Cir. 2000) ........................................................... 21

*Greenberg v. Life Ins. Co. of Virginia*,
177 F.3d 507, 514 (6th Cir. 1999) ............................................................. 8

*Hall St. Assocs., L.L.C. v. Mattel, Inc.*,
552 U.S. 576, 581 (2008) ........................................................................... 9

*Hensel v. Cargill, Inc.*,
198 F.3d 245 (6th Cir. 1999) ..................................................................... 21

*Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*,
350 F.3d 568, 573 (6th Cir. 2003) ............................................................. 21

*In re Nestorovski Est.*,
283 Mich. App. 177, 202; 769 N.W.2d 720, 735 (2009) ........................... 18

*James & Jackson, LLC v. Willie Gary, LLC*,
906 A.2d 76, 79 (Del. 2006) ..................................................................... 14

*Javitch v. First Union Securities, Inc.*,
315 F.3d 619, 624 (6th Cir. 2003) ............................................................. 10

*Majkowski v. Am. Imaging Mgmt. Servs., LLC*,
913 A.2d 572, 583 (Del. Ch. 2006) ........................................................... 14

*McKinstry v Valley Obstetrics-Gynecology Clinic, PC*,
428 Mich 167, 184; 405 N.W.2d 88, 96 (1987) ........................................ 17

*Moses H. Memorial Hosp. v. Mercury Const. Corp.*,
460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983) ................. 9, 11

*NAMA Holdings, LLC v. Related World Mkt. Ctr., LLC*,
922 A.2d 417, 430 (Del. Ch. 2007) ........................................................... 14

*Parfi Holding AB v. Mirror Image Internet, Inc.*,
817 A.2d 149 (Del. 2002) ........................................................................... 14

*Powers v. Charles River Labs., Inc.*,
No. 16-CV-13668, 2017 WL 4324942 at *4 (E.D. Mich. Sep. 29, 2017),
*appeal dismissed*, No. 17-2325, 2017 WL 7310713 (6th Cir. Nov. 29, 2017) ........8

*Prima Paint Corp. v. Flood & Conklin Mfg.,*
388 U.S. 395, 403–04, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967).............12, 16

*Prude v. McBride Rsch. Lab'ys, Inc.*,
No. 07-13472, 2008 WL 360636, at *5 (E.D. Mich. Feb. 8, 2008) .......................20

*Rent-A-Center, West, Inc v Jackson*,
561 U.S. 63, 69 n 1, 130 S Ct 2772, 177 L Ed 2d 403 (2010)................................19

*Roasting Plant of Michigan JV, LLC v. Roasting Plant, Inc.*,
No. 18-CV-10295, 2018 WL 5885508, at *6 (E.D. Mich. Nov. 9, 2018)...............20

*Scanlon v. P & J Enterprises, Inc.,*
182 Mich. App. 347, 350; 451 N.W.2d 616, 618 (1990)...................................18, 20

*Stout v. J.D. Byride*r,
228 F.3d 709, 714 (6th Cir. 2000) ............................................................................9

*Southland Corp. v. Keating*,
465 U.S. 1, 11, 104 S. Ct. 852, 858, 79 L. Ed. 2d 1 (1984)....................................10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308, 322, 127 S. Ct. 2499, 2509, 168 L. Ed. 2d 179 (2007).....................7

*Watts v Polaczyk*,
242 Mich App 600, 608; 619 NW2d 714, 718-19 (2000) .......................................17

## **Statutes and Court Rules:**

9 U.S.C. §1 ..........................................................................................................4, 11

9 U.S.C. § 2 .............................................................................................................9

9 U.S.C. § 3 ...........................................................................................................21

9 U.S.C. § 4 ...........................................................................................................21

9 U.S.C. § 206 ...........................................................................................................21

M.C.L. § 445.1527(f) .........................................................................................19, 20

**Federal Rules:**

Fed. R. Civ. P. 12(b)(2) ...........................................................................................21

Fed. R. Civ. P. 12(b)(6) .............................................................................................7

## <u>STATEMENT OF ISSUES PRESENTED</u>

I.  Whether this Court should dismiss Plaintiff's Complaint where the parties entered a binding arbitration Agreement and when the Agreement requires that the claims be submitted to binding arbitration.

Defendant Answers:     **YES**
Plaintiff answers:       **NO**

## MOST APPROPRIATE AUTHORITY FOR THE RELIEF SOUGHT

### Cases

*Flint Warm Air Supply Co. v. York Int'l Corp.*, 115 F. Supp. 2d 820 (E.D. Mich. 2000)

*Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568 (6th Cir. 2003)

*Moses H. Memorial Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)

### Statutes

9 U.S.C. § 2

## I.    __INTRODUCTION__

Plaintiff BDD Group, LLC, ("Plaintiff") and Defendant Crave Franchising, LLC, ("Crave Franchising") are parties to a franchise agreement (the "Agreement"). The Franchise itself is a Crave Restaurant that serves a variety of hot dogs and barbeque meals.  Plaintiff is the franchisee, and Crave Franchising is the franchisor. Defendant Samantha Rincione ("Ms. Rincione) is a founder of Crave and the Chief Executive Officer. Defendant Salvatore Rincione ("Mr. Rincione") is also a founder of Crave and the President.[1]

In December 2020, Plaintiff, through its principals Darrell Olds and Bradley Fuchs, signed the franchise agreement with the intention of opening a Crave restaurant franchise. Plaintiff now alleges Defendants mislead it as to the initial costs involved in opening the franchise as well as the length of time it would take to open. Plaintiff's Amended Complaint alleges claims of fraudulent misrepresentation, silent fraud, innocent misrepresentation, violation of the Michigan Franchise Investor Law ("MFIL"), and violation of the Federal Trade Commission's Franchise Rule. ECF No. 9.[2] All of Plaintiff's fraud claims relate to

---

[1]    Crave Franchising, Ms. Rincione, and Mr. Rincione are hereinafter collectively referred to as "Defendants."

[2]    Plaintiff filed an Amended Complaint after the Court issued a Show Cause Order. The only amendments made by Plaintiff related to issues of diversity jurisdiction. *See* ECF No. 10.

{00116368.DOCX}

the costs, time, and contractor requirements Plaintiff anticipated would be required to start the franchise.

Plaintiff's allegations have no merit. Regardless, the federal court system is not the proper forum for Plaintiff's Complaint. To the contrary, the Agreement includes a binding arbitration clause which requires the parties to arbitrate any and all disputes arising under or in connection with the Agreement. The arbitration clause specifically encompasses claims of fraud in the inducement and other claims of fraud, as well as the arbitrability of *any* matter. Notably, although Plaintiff's salacious Complaint asserts Defendants committed various acts of fraud, the Complaint does not make *any* allegations of fraud in the inducement as it relates to the arbitration clause.

Through the Agreement, Plaintiff contractually agreed that any and all claims would be submitted to binding arbitration. The arbitration clause is binding and enforceable. As such, the Court should enforce the Agreement, compel Arbitration of this matter, and dismiss Plaintiff's Complaint.

## II.   FACTUAL BACKGROUND

On or about December 7, 2020, Plaintiff, through its principals Darrell Olds and Bradley Fuchs, signed a franchise agreement (the "Agreement") with Crave Franchising with the intention of opening a Crave restaurant franchise. **(Exhibit A,**

**Franchise Agreement).** The Agreement includes a binding arbitration clause.

Specifically, Section 19.7 of the Agreement states:

> Except to the extent we elect to enforce the provisions of this Agreement by judicial process and injunction in our sole discretion, **all disputes, claims and controversies between the parties arising under or in connection with this Agreement or the making, performance or interpretation thereof (including claims of fraud in the inducement and other claims of fraud and the arbitrability of any matter) which have not been settled through negotiation will be settled by binding arbitration** within Wilmington, Delaware, under the authority of the statutes of Delaware (the "Statutes"). The arbitrator(s) will have a minimum of five (5) years of experience in franchising or distribution law and will have the right to award specific performance of this Agreement. If the parties cannot agree upon a mutually agreeable arbitrator, then the arbitration shall be conducted as per the selection method set forth in the Statutes. To the extent such rules are not inconsistent with the provisions of this arbitration provision or the Statutes, the proceedings will be conducted under the commercial arbitration rules of the American Arbitration Association. The decision of the arbitrator(s) will be final and binding on all parties. This Section will survive termination or non-renewal of this Agreement under any circumstances. Judgment upon the award of the arbitrator(s) may be entered in any court having jurisdiction thereof. During the pendency of any arbitration proceeding, you and we shall fully perform our respective obligations under this Agreement.

**(Ex. A, Section 19.7, p. 54) (emphasis added).**

The arbitration clause specifically encompasses claims related the formation of the Agreement, performance of the Agreement, or interpretation of the Agreement. (*Id.*). The arbitration clause also calls for an arbitrator to determine claims of fraud in the inducement and the arbitrability of *any* claims. (*Id.*). In essence, the parties contractually agreed to resolve <u>all disputes</u> via arbitration, and

that all matters related to any dispute arising out of or in connection with the Agreement are to be decided by an arbitrator, not the courts.

The Agreement further addresses the issue of venue for disputes. Section 19.8 states:

> With respect to any claims, controversies or disputes which are not finally resolved through negotiation or arbitration, or as otherwise provided above, you and the Principals hereby irrevocably submit themselves to the jurisdiction of the state courts and the Federal District Court nearest to Wilmington, Delaware. You and the Principals hereby waive all questions of personal jurisdiction for the purpose of carrying out this provision. You and the Principals hereby agree that service of process may be made upon any of them in any proceeding relating to or arising out of this Agreement or the relationship created by this Agreement by any means allowed by Delaware or federal law. You and the Principals further agree that venue for any proceeding relating to or arising out of this Agreement shall be Wilmington, Delaware; provided, however, with respect to any action (1) for monies owed, (2) for injunctive or other extraordinary relief or (3) involving possession or disposition of, or other relief relating to, real property, we may bring such action in any State or Federal District Court which has jurisdiction.
>
> **Except as provided elsewhere in this Agreement (for example, with regard to the applicability of the Federal Arbitration Act, 9 U.S.C. §1 et seq. and the effect of federal preemption of state law by such Act)** and except to the extent governed by the United States Trademark Act and other federal laws, the parties agree that this Agreement (including any claims, counter-claims or otherwise by you) **and all other matters concerning the parties will be governed by, and construed and enforced in accordance with, the laws of the state of Delaware**.

**(Ex. A, p. 54, Section 19.8) (emphasis added).**

In addition, the Agreement also includes a choice of law provision. Specifically, Section 19.9 of the Agreement, "Agreement Regarding Governing Law and Choice of Forum" states:

> You, the Principals and we acknowledge that the parties' agreement regarding applicable state law and forum set forth in Sections 19.7 and 19.8 above provide each of the parties with the mutual benefit of uniform interpretation of this Agreement and any dispute arising out of this Agreement or the parties' relationship created by this Agreement. Each of you, the Principals and we further acknowledge the receipt and sufficiency of mutual consideration for such benefit and that each party's agreement regarding applicable state law and choice of forum have been negotiated in good faith and are part of the benefit of the bargain reflected by this Agreement.

**(Ex. A, p. 54, Section 19.9)**

Lastly, the Agreement addresses the issue of severability. Section 19.14 states that:

> Except as expressly provided to the contrary herein, each portion, section, part, term and provision of this Agreement shall be considered severable; and if, for any reason, any portion, section, part, term or provision is determined to be invalid and contrary to, or in conflict with, any existing or future law or regulation by a court or agency having valid jurisdiction, this shall not impair the operation of, or have any other effect upon, the other portions, sections, parts, terms or provisions of this Agreement that may remain otherwise intelligible, and the latter shall continue to be given full force and effect and bind the parties; the invalid portions, sections, parts, terms or provisions shall be deemed not to be part of this Agreement; and there shall be automatically added such portion, section, part, term or provision as similar as possible to that which was severed which shall be valid and not contrary to or in conflict with any law or regulation.

**(Ex. A, p. 55, Section 19.14)**

On December 7, 2020, Plaintiff and Crave Franchising entered into the Agreement. Plaintiff now alleges Defendants fraudulently induced Plaintiff to sign the Agreement. Plaintiff's fraud allegations all relate to the *potential* costs and time involved to start, build out, and open a franchise. For example, Plaintiff alleges Defendants misrepresented the total investment required to begin the franchise. ECF No. 9, PageID477-78, ¶18-23. Similarly, Plaintiff alleges Defendants misrepresented the *estimated* costs for "leasehold improvements." ECF No. 9, PageID478, ¶23-25. Plaintiff alleges Defendants also misrepresented the estimated costs for "personalized total investments" Plaintiff would incur to start the franchise. ECF No. 9, PageID 478, ¶26-28. Plaintiff also alleges claims under the MFIL and the Federal Trade Commission's Franchise Rule. ECF No. 9.[3]

Plaintiff's allegations are baseless. In any event, Plaintiff does not dispute that the parties entered into a contract, namely, the Agreement.[4] Instead, Plaintiff alleges that Defendants misrepresented the "initial total investment amount, the

---

[3] It is unclear why Plaintiff continues to assert a claim under the FTC's Franchise Rule. On January 16, 2024, this Court entered an order requiring Plaintiff to show cause why the case should not be dismissed for lack of subject matter jurisdiction. *See* ECF No. 8. In its order, this Court observed, "the only 'federal' claim that Plaintiff raises is the alleged violation of the Federal Trade Commission's Franchise Rule. (ECF No. 1, PageID.32–33.) However, there is no private right of action for violations of the Franchise Rule." ECF No. 8, PageID.470 (internal citations omitted). Although Plaintiff thereafter filed an Amended Complaint, the Amended Complaint still assert a (nonexistent) claim under the FTC's Franchise Rule. *See* ECF No. 9, PageID.504-10.

[4] To the contrary, Plaintiff admits that it executed and entered into the Agreement on December 7, 2020. *See* ECF No. 9, PageID.479, ¶31.

timeframe needed to open the restaurant, the costs of leasehold improvement, the loan amount needed to fund the investment, that there is no required general contractor, [and] the number of former franchisees" to induce Plaintiff to sign the Agreement. ECF No. 9, PageID.497-501, ¶¶123, 131, 139. Defendants deny Plaintiff's allegations, but this Court is not the proper forum for purposes of a substantive discussion.

The parties willingly and knowingly agreed to resolve any and all disputes arising out of the Agreement via binding arbitration. Notably, despite filing an Amended Complaint, Plaintiff has not raised *any* allegations of fraudulent inducement or any other fraud claims as it relates to the Agreement's arbitration clause. ECF No. 9.

Ultimately, the arbitration clause is valid and enforceable. For the reasons set forth below, the Court should compel the parties to binding arbitration as the parties contractually agreed.

### III.   <u>LEGAL STANDARD</u>

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) asserts that the Complaint fails to state a claim upon which relief can be granted. The Court may consider the complaint as well as: (1) documents referenced in the pleadings and central to the plaintiff's claims, (2) matters of which a court may properly take notice, and (3) public documents. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551

U.S. 308, 322, 127 S. Ct. 2499, 2509, 168 L. Ed. 2d 179 (2007); *Amini v. Oberlin*, 259 F.3d 493, 502 (6th Cir. 2001). The consideration of these items does <u>not</u> convert a 12(b)(6) motion into a motion for summary judgment. *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999).

"Regardless of which procedural rule is invoked, it is beyond question that a court resolving a motion to compel arbitration is not constrained to consider only the allegations of plaintiff's complaint. Indeed, the court is obligated, assuming the issue cannot be determined from the face of plaintiff's complaint, to consider affidavits and other evidence of a type that would be submissible at the summary judgment stage." *Powers v. Charles River Labs., Inc.*, No. 16-CV-13668, 2017 WL 4324942 at *4 (E.D. Mich. Sep. 29, 2017), *appeal dismissed*, No. 17-2325, 2017 WL 7310713 (6th Cir. Nov. 29, 2017). "In order to show that the validity of the agreement to arbitrate is 'in issue,' the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate . . . ." *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002).

## IV.   LAW AND ARGUMENT

### A.   The Arbitration Provision is Valid Under the Federal Arbitration Act

The applicable arbitration provision is valid under the Federal Arbitration Act ("FAA"). FAA § 2, provides that a "written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by

arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (emphasis added). The Supreme Court has long held that FAA § 2 "create[s] a body of federal substantive law of arbitrability, applicable to *any* arbitration agreement within the coverage of the act." *Moses H. Memorial Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983) (emphasis in original).

In enacting the FAA, Congress sought to overcome what was then a widespread judicial hostility to the enforcement of arbitration agreements. *See Hall St. Assocs., L.L.C. v. Mattel, Inc.,* 552 U.S. 576, 581 (2008). The FAA unequivocally compels courts to "rigorously enforce arbitration agreements according to their terms, including terms that specify *with whom* [the parties] choose to arbitrate their disputes, and the rules under which that arbitration will be conducted." *American Express Co. v. Italian Colors Rest*, 570 U.S. 228, 233, 133 S. Ct. 2304, 2309, 186 L. Ed. 2d 417 (2013) (internal quotations and citations omitted) (emphasis in original).

The FAA is designed "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses, supra* at 22. Any ambiguities or doubts regarding the parties' intentions should be resolved in favor of arbitration. *Stout v. J.D. Byride*r, 228 F.3d 709, 714 (6th Cir. 2000).

B.     The FAA Requires Enforcement of the Arbitration Clause

"Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Securities, Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) (citing *AT&T Techs. v. Communications Workers of Am.*, 475 U.S. 643, 649 (1986)). In this case, a valid agreement to arbitrate exists because the Parties entered into a binding contract which includes a valid arbitration clause. The FAA controls the action because the Agreement evidences a transaction involving commerce and requires the parties to arbitrate disputes arising out of the contract. The FAA ultimately preempts any state laws related to arbitration.

Unquestionably, the Agreement "evidences a transaction involving commerce." *Flint Warm Air Supply Co. v. York Int'l Corp.*, 115 F. Supp. 2d 820, 824 (E.D. Mich. 2000). Defendant, through the Agreement, transferred skills, branding, and expertise related to a franchise restaurant from Wyoming to Michigan, and fees were exchanged by Plaintiff. **(*See* Ex. A).** *See also Southland Corp. v. Keating*, 465 U.S. 1, 11, 104 S. Ct. 852, 858, 79 L. Ed. 2d 1 (1984). As noted in the facts, Plaintiff does not dispute that the parties entered into a contract. *See* ECF No. 9, PageID.479, ¶¶1-5, 31. Further, the parties expressly intended for

the FAA to govern their relationship as it relates to arbitration. Indeed, Section 19.8 of the Agreement states that "all . . . matters concerning the parties will be governed by, and construed and enforced in accordance with" Delaware law **except** "with regard to the applicability of the Federal Arbitration Act, 9 U.S.C. §1 et seq. . . ." **(Ex. A, p. 54, Section 19.8**) (emphasis added).

Moreover, there can be no dispute that the parties voluntarily agreed to binding arbitration to resolve *all* claims arising out of the Agreement. Specifically, the Agreement states that:

> Except to the extent we elect to enforce the provisions of this Agreement by judicial process and injunction in our sole discretion, **all disputes, claims and controversies between the parties arising under or in connection with this Agreement or the making, performance or interpretation thereof (including claims of fraud in the inducement and other claims of fraud and the arbitrability of any matter) which have not been settled through negotiation will be settled by binding arbitration** . . .

**(Ex. A, p. 54, Section 19.7)** (emphasis added).

Unquestionably, the FAA applies to the Agreement. The only question then for this Court would be whether the parties agreed to arbitrate the claims Plaintiff raises in the Complaint, which they did.

"Both the Supreme Court and the Sixth Circuit have repeatedly and emphatically reminded lower courts that when parties have contracted for extra-judicial resolution of their disputes through arbitration, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Flint Warm*

11

*Air Supply Co.*, 115 F. Supp. 2d at 825 (citing *Moses, supra*) (quotations omitted). The Supreme Court has long held that there are only "two limitations on the enforceability of arbitration agreements subject to the FAA: (1) they must be a part of either a maritime contract or a contract dealing with interstate commerce; and (2) arbitration agreements may be revoked "upon grounds as exist at law or in equity for the revocation of any contract." *Id*. (citation omitted).

Neither "limitation" is at issue in this matter. The first has been addressed, as the arbitration clause is included in the Agreement and the Agreement clearly deals with interstate commence **(Ex. A, Section 19.7).** The second limitation only applies to "claims of fraud in the inducement <u>in the making of the agreement to arbitrate, not to claims that the contract, as a whole, was fraudulently induced</u>." *Id*. (emphasis added) (citing *Prima Paint Corp. v. Flood & Conklin Mfg.,* 388 U.S. 395, 403–04, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967) (holding that unless fraud allegations relate to the arbitration agreement specifically, arbitrators can determine the fraud claims).

In this case, Plaintiff's Complaint alleges numerous claims of fraud against Defendants; however, none of them relate to the arbitration clause. *See generally* ECF No. 9. Indeed, Plaintiff's fraud claims all relate to the "initial total investment amount, the timeframe needed to open the restaurant, the costs of leasehold improvement, the loan amount needed to fund the investment, that there is no

required general contractor, [and] the number of former franchisees" as well as whether a specific contractor was required to be used by Plaintiff. ECF No. 9, PageID497-501¶¶123, 131, 139. The Complaint does not even *mention* arbitration. ECF No. 9. As such, the arbitration clause is enforceable, and the Court must compel the parties to arbitration as contractually bargained and agreed. **(Ex. A).**

C.    State Law Favors Arbitration

"[A]lthough state law may dictate the standards for generally applicable contract defenses, such as fraudulent inducement, the FAA governs the enforceability of arbitration clauses generally." *Simons,* 288 F.3d at 887 (6th Cir. 2002). Defendant anticipates that Plaintiff may attempt to rely on state law in a misplaced effort to assert contractual defenses to the formation of the arbitration clause set forth in the Agreement. But as set forth below, any such argument is without merit.

1.    Delaware Law Favors the Enforcement of the Arbitration Clause

Section 19.8 of the Agreement directs that the document is governed by and must be interpreted using Delaware law. **(Ex. A, p. 54, Section 19.8).** Defendant anticipates Plaintiff will assert Michigan law should be applied. Ultimately, Delaware and Michigan analyze arbitration agreements and motions to compel arbitration under a similar framework. Importantly, both states have held that parties can contractually delegate all disputes to an arbitrator, including the issue of

arbitrability itself. Whether the Court analyzes the issue under Delaware law or Michigan law, the end result is the same: the parties must be compelled to arbitration.

Delaware "arbitration law mirrors federal law[.]" *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 79 (Del. 2006). When "determining if a given claim is subject to arbitration" Delaware courts "engage in a two-part inquiry[.]" *NAMA Holdings, LLC v. Related World Mkt. Ctr., LLC*, 922 A.2d 417, 430 (Del. Ch. 2007). Specifically:

> First, the court must determine whether the arbitration clause is broad or narrow in scope. Second, the court must apply the relevant scope of the provision to the asserted legal claim to determine whether the claim falls within the scope of the contractual provisions that require arbitration. If the court is evaluating a narrow arbitration clause, it will ask if the cause of action pursued in court directly relates to the right in the contract. If the arbitration clause is broad in scope, the court will defer to arbitration on any issues that touch on contract rights or contract performance.

*Id*. (citing/quoting *Parfi Holding AB v. Mirror Image Internet, Inc.,* 817 A.2d 149 (Del. 2002). Delaware courts have a "strong presumption in favor of arbitration, and, accordingly, contractual arbitration clauses are generally interpreted broadly by the courts." *Id*. Delaware courts have routinely held that arbitration clauses stating that "any dispute controversy, or claim" arising out of a contract are broad and signal "an intent to arbitrate all possible claims" related to the contract at issue. See *Parfi, supra* at 155; see also *Majkowski v. Am. Imaging Mgmt. Servs., LLC,*

913 A.2d 572, 583 (Del. Ch. 2006) (holding that an arbitration clause which "required the parties to arbitrate all disputes that "arise out of" or "relate to" a contract was broad in scope.).

That said, Delaware courts have further reasoned that the issue of arbitrability must be considered. Arbitrability "relates to whether the parties intended to submit a specific dispute to arbitration." *Fairstead Cap. Mgmt. LLC v. Blodgett*, 288 A.3d 729, 750 (Del. Ch. 2023) (citation/quotation omitted). Questions of substantiative arbitrability, i.e. issues such as the "scope, validity, and enforceability of an arbitration agreement" are generally reserved for the courts. *Id.* at 751. Questions of procedural arbitrability, such as "whether the parties have complied with the terms of an arbitration provision" are generally for arbitrators to decide. *Id.* However, Delaware courts, following the U.S. Supreme Court's lead, have further held that parties can contractually delegate substantive arbitrability questions to an arbitrator so long as there is "clear and unmistakable evidence of the intent to delegate" the issue to the arbitrator. *Id.* (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)).

When examining the arbitrability question, the "queen of all threshold issues," the court must determine whether the party challenging arbitration is challenging the contract as a whole or solely the arbitration agreement. *Id.*

Delaware, again following federal law, has held that "when a party challenges the validity of the contract [as a whole] on the grounds that it had been induced by fraud, the arbitrator had authority to adjudicate the challenge." *Id*. (citing *Prima Paint, supra*). "[U]nless the fraud related to the arbitration agreement itself, the arbitrator could adjudicate the fraud claim." *Id*. (citations omitted). Moreover, Delaware courts have adopted the "majority federal view" and held that "reference to the [American Arbitration Association] rules evidences a clear and unmistakable intent to submit arbitrability issues to an arbitrator." *Id*.

Here, the Court need look no further than Section 19.7 of the Agreement to resolve the issue of arbitrability. The Agreement's arbitration clause specifically states that "all disputes, claims and controversies between the parties in connection with this Agreement . . .including . . . the arbitrability of any matter" are to be resolved via binding arbitration. **(Ex. A, p. 54, Section 19.7).** There are no claims that Defendants committed fraud as it relates to the arbitration clause. Thus, the plain language of the Agreement delegates all disputes, including arbitrability, to the arbitrator selected by the parties. Moreover, the Agreement explicitly states that arbitration "will be conducted under the commercial arbitration rules of the American Arbitration Association." **(Ex. A, p. 54, Section 19.7).** In short, there is no question that Plaintiff and Defendant have agreed to binding arbitration *and* that

any and all disputes, including arbitrability, are for an arbitrator to decide. As such, the Court must compel the parties to arbitration as contractually agreed upon.

> 2. Michigan Law Favors the Enforcement of the Arbitration Clause

Michigan courts have similarly held that "arbitration is a matter of contract." *Altobelli v Hartmann*, 499 Mich 284, 295; 884 N.W.2d 537, 542 (2016). Arbitration agreements are interpreted in the same manner as ordinary contracts. *Bayati v Bayati*, 264 Mich App 595, 599; 691 NW2d 812, 814-15 (2004). The goal of contractual interpretation is to honor the parties' intent. *Davis v LaFontaine Motors, Inc*, 271 Mich App 68, 73; 719 NW2d 890 (2006). Courts discern the parties' intent from the contract's language. *Id.* at 73. "Michigan law presumes that one who signs a written agreement knows the nature of the instrument so executed and understands its contents." *McKinstry v Valley Obstetrics-Gynecology Clinic, PC*, 428 Mich 167, 184; 405 N.W.2d 88, 96 (1987). This Court should interpret the Agreement in a manner that renders the agreement valid and enforceable and any doubt about arbitration should be resolved in favor of arbitration. *See, e.g., Fromm v MEEMIC Ins Co*, 264 Mich App 302, 306; 690 NW2d 528, 531 (2004); *Watts v Polaczyk*, 242 Mich App 600, 608; 619 NW2d 714, 718-19 (2000).

Here, there can be no dispute that the parties agreed to binding arbitration. The contract is unambiguous with respect to which claims are subject to binding arbitration, as the contract sets forth that *any* claims arising out of the Agreement

and/or the making, performance or interpretation thereof fall within the arbitration clause. **(Ex. A, p. 54, Section 19.7).** Moreover, Michigan Courts have long held that a claim of "fraud in the inducement of an entire contract containing an arbitration clause <u>is to be referred to arbitration under the</u>" FAA. *Scanlon v. P & J Enterprises, Inc.,* 182 Mich. App. 347, 350; 451 N.W.2d 616, 618 (1990) (emphasis added).

Similar to the Delaware analysis, Plaintiff cannot plausibly raise any legitimate arguments regarding arbitrability determinations under Michigan law. Michigan Courts use a three-part test to determine the arbitrability of a given issue: "1) is there an arbitration agreement in a contract between the parties; 2) is the disputed issue on its face or arguably within the contract's arbitration clause; and 3) is the dispute expressly exempted from arbitration by the terms of the contract." *In re Nestorovski Est*., 283 Mich. App. 177, 202; 769 N.W.2d 720, 735 (2009) (citation omitted). Here, there is an arbitration agreement contained within a contract between the parties. **(Ex. A).** Second, the ostensible disputed issues— whether the parties should be in arbitration and whether Plaintiff's claims are arbitrable—all clearly fall within the contract's arbitration provision. Section 19.7 specifically states that "all disputes, claims and controversies arising under or in connection with this Agreement or the making, performance or interpretation thereof (including claims of fraud in the inducement and other claims of fraud and

the arbitrability of any matter)" are to be decided by binding arbitration. **(Ex. A).**[5]

The parties therefore agree that *any* issues related to the Agreement, including its formation, fraud claims, and arbitrability, are to be decided in arbitration rather than by the Courts. **(Ex. A).** See also *Rent-A-Center, West, Inc v Jackson*, 561 U.S. 63, 69 n 1, 130 S Ct 2772, 177 L Ed 2d 403 (2010). Lastly, the parties clearly *did not* exempt disputes related to the arbitration provision from arbitration. **(Ex. A).** Therefore, the Court should not entertain any challenges to the arbitration provision, as such disputes are to be decided by the arbitrator.

### 3. Any Argument that MFIL Precludes Arbitration of this Lawsuit is Without Merit

Defendant anticipates Plaintiff will argue that arbitration is unenforceable based on Section 27(f) of the MFIL. Section 27(f) of the MFIL states that a "provision requiring that arbitration . . . be conducted outside this state" is void and unenforceable. M.C.L. § 445.1527(f). However, this provision of MFIL has no bearing on the resolution of issue presented in the instant motion because, as the Eastern District of Michigan expressly held in *Flint Warm Air Supply Co.*, 115 F. Supp. 2d at 827-28, the FAA preempts Section 27(f) of MFIL

---

[5] Plaintiff's MFIL and FTC Franchise Rule claims arise out of the Agreement and making thereof. *See* ECF No. 9, PageID.501-10, ¶¶144-169. Moreover, nothing in the MFIL prohibits arbitration. *See generally*, MCL § 445.1501 *et seq*. And as set forth above, this Court has already observed that the FTC Franchise Rule does not even provide a private cause of action. *See supra*, note 3.

*Flint Warm Air Supply Co.* is directly on point. There, this Court held that M.C.L. § 445.1527(f) is preempted by the FAA because the "FAA's primary purpose is to ensure that arbitration agreements are enforced according to their terms and Section 27(f) of the MFIL imposes limitations on the method and manner by which the parties agreed to arbitrate their disputes[.]" *Flint Warm Air Supply Co.*, 115 F. Supp. 2d at 827.[6] Moreover, the Michigan Court of Appeals has held that the FAA preempts any conflicting provisions of the MFIL. *See Scanlon v. P & J Enterprises, Inc.,* 182 Mich. App. 347, 350, 451 N.W.2d 616, 617 (1990) ("The federal arbitration act preempts any conflicting provisions of the Michigan Franchise Investment Law.") (internal citations omitted).

All of this said, while Crave Franchising has the contractual right to compel arbitration to occur in Delaware, Crave Franchising <u>only seeks to compel arbitration to occur in Michigan where Plaintiff is domiciled.</u> As such, the Court should compel the Plaintiff and Crave Franchising to proceed with arbitration.

---

[6] Since this Court issued its opinion in *Flint Warm Air Supply Company*, it has held in at least three other cases that the FAA preempts the MFIL. *See, e.g., Roasting Plant of Michigan JV, LLC v. Roasting Plant, Inc.*, No. 18-CV-10295, 2018 WL 5885508, at *6 (E.D. Mich. Nov. 9, 2018) (citing *Flint Warm Air Supply Co.* and holding that the FAA preempts the MFIL); *Binder v. Med. Shoppe Int'l*, No. 09-14046, 2010 WL 2854308, at *6 (E.D. Mich. July 20, 2010) (same); *Prude v. McBride Rsch. Lab'ys, Inc.*, No. 07-13472, 2008 WL 360636, at *5 (E.D. Mich. Feb. 8, 2008) (same).

D.    This Court Should Dismiss Plaintiff's Complaint

Because there is a valid and enforceable Agreement requiring arbitration governing Plaintiff's claims in the instant action, this Court should dismiss Plaintiff's Complaint with prejudice and allow Plaintiff to pursue its claims through arbitration, if it so chooses.  "[U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 573 (6th Cir. 2003) (quoting 9 U.S.C. § 4); *see also* 9 U.S.C. § 206 (authorizing Court to compel arbitration); 9 U.S.C. § 3 (authorizing Court to stay proceedings while arbitration takes place). "Under § 3 of the [Federal Arbitration Act], . . . litigation in which all claims are referred to arbitration may be dismissed." *Hensel v. Cargill, Inc.*, 198 F.3d 245 (6th Cir. 1999); see also *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000) ("The weight of authority clearly supports dismissal where all of the issues raised in the district court must be submitted to arbitration.").

Alternatively, the Court should stay the proceedings until the matter is resolved in binding arbitration. See 9 U.S.C. § 3.[7]

---

[7]    The other Defendants in this lawsuit, Samantha and Salvatore Rincione, have separately moved for dismissal of the claims asserted against them pursuant to Fed. R. Civ. P. 12(b)(2) based on the lack of personal jurisdiction. *See* ECF No.

## V.    CONCLUSION

WHEREFORE, Crave Franchising respectfully requests that this Court dismiss Plaintiff's Complaint with prejudice and compel the arbitration of this matter. Crave Franchising further requests an award of costs, attorney fees, and such other relief as this Court deems just and equitable.

Respectfully submitted,

STARR, BUTLER & STONER, PLLC

By:    /s/ Daniel C. Waslawski
Scott D. Stoner (P55653)
Daniel C. Waslawski (P78037)
Zeth D. Hearld (P79725)
Attorneys for Defendants
20700 Civic Center Dr., Ste. 290
Southfield, MI  48076
(248) 864-4935
sstoner@starrbutler.com
dwaslawski@starrbutler.com
Dated: February 7, 2024          zhearld@starrbutler.com

### CERTIFICATE OF SERVICE

The undersigned says that on February 7, 2024, she has caused to be served a copy of **Defendant's Motion to Dismiss and Compel Arbitration, Brief in Support of Motion and this Certificate of Service** via the Court's electronic filing system upon all attorneys of record.

I declare that the above statements are true and correct to the best of my knowledge, information and belief.

/s/ Kiersten Plane

12. Should this Court deny the Rincione's motion to dismiss for lack of personal jurisdiction in any part, this Court should order supplemental briefing on the issue of whether Plaintiff must also arbitrate its claims against Ms. and Mr. Rincione.