## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

BDD Group, LLC,

                Plaintiff,

v.

Crave Franchising, LLC, *et al.*,

                Defendants.

_____/

Case No. 24-cv-10035

Judith E. Levy
United States District Judge

Mag. Judge Elizabeth A. Stafford

### ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION [12] AND GRANTING DEFENDANT SALVATORE RINCIONE'S REQUEST TO COMPEL ARBITRATION [21]

On January 5, 2024, Plaintiff BDD Group, LLC, filed the complaint in this case. (ECF No. 1.) Plaintiff amended the complaint on January 24, 2024. Plaintiff asserts several claims against Defendants Crave Franchising, LLC, Samantha Rincione, and Salvatore Rincione: (1) fraudulent misrepresentation, (2) silent fraud, (3) innocent misrepresentation, (4) violation of Michigan's Franchise Investor Law, and (5) violation of the Federal Trade Commission's Franchise Rule. (*Id.*

at PageID.473–474, 497–505.) Plaintiff alleges that these claims arise out of its franchising agreement with Defendants.

Before the Court is Samantha Rincione ("Ms. Rincione") and Salvatore Rincione's ("Mr. Rincione") motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). (ECF No. 12.) The motion is fully briefed. (ECF Nos. 15, 18.) On May 9, 2024, the Court held a hearing and heard oral argument. At this hearing, the Court granted in part and denied in part Defendant Crave Franchising, LLC's ("Crave") motion to dismiss and compel arbitration, and stayed the case as to Crave. (ECF No. 19.)

After the hearing, at the Court's request, Ms. and Mr. Rincione submitted supplemental briefing "on the issue of whether they may compel arbitration of Plaintiff's claims," (ECF No. 21, PageID.1766), which was initially raised in Crave's motion to dismiss and compel arbitration. (ECF No. 13, PageID.1017–1018 n.7.) Plaintiff filed a timely response to the supplemental briefing. (ECF No. 24.)

For the reasons set forth below, Defendants' motion to dismiss for lack of personal jurisdiction is granted in part and denied in part. (ECF No. 12.) Defendants' motion to dismiss is granted as to Ms. Rincione, and

is denied as to Mr. Rincione. Additionally, Mr. Rincione's request to compel arbitration is granted. (ECF No. 21.)

## I.   Background

Plaintiff BDD Group, LLC, is owned by Brad Fuchs and Darrell Olds. (ECF No. 9, PageID.473.) Defendant Crave, is a hot dog and barbecue franchise co-founded and owned by Ms. and Mr. Rincione, a married couple domiciled in New York. (*Id.*) Ms. Rincione is the CEO, and Mr. Rincione is the president and Chief Development Officer. (*Id.* at PageID.474.)

In 2020, Plaintiff contacted Crave to inquire about opening a Crave restaurant in Canton, Michigan. (*Id.* at PageID.476.) Mr. Rincione responded to this inquiry via email with a Franchise Disclosure Document ("FDD"). (*Id.* at PageID.477–478.) In the FDD, Crave indicated that the total investment to begin operations would range from $220,400 to $582,000, and Mr. Rincione supplied a personal estimate that the total cost of investment would be $549,663.64. (*Id.* at PageID.477–478.) On December 7, 2020, Plaintiff entered into the Franchise Agreement with Crave. (*Id.* at PageID.479.)

3

Plaintiff alleges several instances of wrongdoing. In the FDD, Crave stated that it needed only to approve Plaintiff's chosen contractor, but later required Plaintiff to hire Provost Construction as Plaintiff's general contractor. (ECF No. 15, PageID.1118–1119.) This requirement caused Plaintiff to have additional expenses because Plaintiff had to pay for the living expenses of Provost's out-of-state employees during the build-out. (ECF No. 9, PageID.482.) As a result, the leasehold improvements undertaken by Provost amounted to $710,000.00, significantly surpassing the estimated $275,000–$550,000 cost of investment. (*Id.* at PageID.481.) Additionally, Crave estimated a four to eight month completion timeline, but Provost did not finish the project until five months after the already-delayed construction schedule. (*Id.* at PageID.481–482.)

Further, Crave initially instructed Plaintiff to secure a loan of $509,663.64, but continued raising the required amount over time, eventually reaching $1,210,658.55 by August 2022. (*Id.* at PageID.483.) Due to the unforeseen delays in loan acquisition and construction completion, the restaurant, originally set to open in September 2021, did not begin operations until February 2023. (*Id.* at PageID.484–485.) All

4

the while, Plaintiff paid over $7,000 in monthly rent while making no revenue. (*Id*. at PageID.485.) When Plaintiff fell behind on its rent, Ms. Rincione assured Plaintiff that she would reach out to its landlord to negotiate a resolution, but neither she nor anyone else contacted the landlord. (*Id*.) As a result, Plaintiff defaulted on its lease. (*Id*.)

Plaintiff claims that Crave's behavior is widespread: numerous Crave franchises have shut down, but Crave's website claims that these locations are "coming soon." (*Id*. at PageID.489.) Plaintiff alleges that Crave lied to them and other franchisees about these other locations. In the 2020 FDD, Crave stated that two franchisees left the franchise, but later recorded that no franchisees left as of 2021. (*Id*. at PageID.496.) Finally, Crave prohibited former franchisees from discussing their experience with the company, and told existing franchisees to disregard communication from a dissatisfied former franchisee. (*Id*. at PageID.495.)

## II.   The Rinciones' motion to dismiss for lack of personal jurisdiction

### A.   Legal Standard

5

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move for dismissal for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). When a court decides a motion under Rule 12(b)(2):

> The plaintiff must first make a prima facie case, which can be done merely through the complaint. The burden then shifts to the defendant, whose motion to dismiss must be properly supported with evidence. Once the defendant has met the burden, it returns to the plaintiff, who may no longer "stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction."

*Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504 (6th Cir. 2020) (citations omitted). "The party seeking to establish the existence of personal jurisdiction bears the burden to establish such jurisdiction, over each defendant independently." *Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 504 (6th Cir. 2014) (citations and internal quotations omitted).

If the district court rules on a Rule 12(b)(2) motion without an evidentiary hearing, the plaintiff need only make out a *prima facie* case that personal jurisdiction exists. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (quoting *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996)). "The plaintiff meets this burden by setting forth 'specific facts showing that the court has jurisdiction.'"

*AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016) (quoting *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)). "[T]he plaintiff may not stand on his pleadings, but must show the specific facts demonstrating that the court has jurisdiction." *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 678 (6th Cir. 2012) (citing *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)). The court views the filings "'in a light most favorable to the plaintiff,' without weighing 'the controverting assertions of the party seeking dismissal.'" *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 847 (6th Cir. 2017) (quoting *Theunissen,* 935 F.2d at 1459).

## B.    Analysis

The Rinciones argue that the Court lacks personal jurisdiction over them. (ECF No. 12.) Personal jurisdiction can be "general" or "specific." *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005) (citing *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002)). General personal jurisdiction exists when "the defendant's affiliations with the forum state are so continuous and systematic as to render the defendant essentially at home there." *Malone*, 965 F.3d at 501. Specific personal jurisdiction

depends on an affiliation between the forum state and the underlying controversy. *Id*. at 502.

The Court must determine if it has specific personal jurisdiction over the Rinciones.[1] Because the court has diversity subject matter jurisdiction over this suit (*see* ECF No. 9, PageID.475–476), the Court may only exercise personal jurisdiction over a party "when such jurisdiction is both authorized by state law and permitted by the Due Process Clause of the Fourteenth Amendment." *SFS Check, LLC v. First Bank of Del.*, 774 F.3d 351, 356 (6th Cir. 2014) (citing *Beydoun*, 768 F.3d at 504). Because "Michigan's long-arm statute 'extends to the limits imposed by federal constitutional due process requirements . . . the two questions become one.'" *AlixPartners*, 836 F.3d at 549 (quoting *Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992)).

---

[1] The Court does not have general personal jurisdiction over the Rinciones. Pursuant to Mich. Comp. Laws § 600.701, a court has general personal jurisdiction when the individual is (1) present in the state when process is served, (2) domiciled in the state when process is served, or (3) consents to personal jurisdiction. It is undisputed that the Rinciones were not served in Michigan, are not domiciled in Michigan, and do not consent to personal jurisdiction. (*See* ECF No. 9, PageID.475–475; ECF No. 12, PageID.953–954.)

As such, the Court must ensure that the exercise of specific personal jurisdiction is proper under the due process clause, i.e., that each defendant "possessed such 'minimum contacts' with the forum state that exercising jurisdiction would comport with "traditional notions of fair play and substantial justice.'" *SFS Check, LLC*, 774 F.3d at 356 (quoting *Beydoun*, 768 F.3d at 505). The Sixth Circuit uses a three-pronged test to determine if minimum contacts exist between a defendant and the state:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Id*. It is Plaintiff's burden to demonstrate that personal jurisdiction exists for each Defendant. *Id.* at 355–56.

### i.   *Salvatore Rincione*

Plaintiff alleges that Mr. Rincione was personally and extensively involved in deceiving Plaintiff. Plaintiff points to the following actions by Mr. Rincione as evincing his personal involvement in the conduct giving rise to this claim:

9

- Stating in a September 7, 2020 email that the franchising agreement was an "amazingly low-cost opportunity," and providing Plaintiff with the FDD, which contained other false estimates and statements. (ECF No. 15, PageID.1129; ECF No. 9, PageID.476–477.)
- Providing Plaintiff with a personalized estimate of costs. (ECF No. 15, PageID.1129.; ECF No. 9, PageID.478–479.)
- Not disclosing that Plaintiff was required to hire a specific contractor for the restaurant's buildout. (ECF No. 15, PageID.1129; ECF No. 9, PageID.499.)
- Repeatedly increasing the loan amount Plaintiff needed for its initial investment. (ECF No. 15, PageID.1129; ECF No. 9, PageID.483.)
- Being "directly involved in convincing the Small Business [Administration] (SBA) to issue the increased loan amounts to BDD." (ECF No. 15, PageID.1129.)[2]

_____

[2] At the May 9, 2024 hearing, Defendants argued that "there's some blending of facts, which is to [say] there's a mulligan stew of things that were alleged in the response brief that are not alleged in the complaint . . . ." (*See* ECF No. 20, PageID.1751.) To the extent that Defendants argue that the Court cannot consider some of these actions because they were not alleged in the complaint, Sixth Circuit precedent appears to hold otherwise. *See Bird*, 289 F.3d at 872 (considering, for purposes of a personal jurisdiction analysis, factual allegations that only appeared in the plaintiff's response to the motion to dismiss and their appellate brief). Additionally, the only alleged action by Mr. Rincione that is not referenced in the complaint is his "convincing" the SBA to issue increased loan amounts. (ECF No. 20, PageID.1755.) The Court does not consider Mr. Rincione's alleged communications with the SBA in this analysis.

Moreover, to the extent that Defendants contest the timing of the acts (ECF No. 20, PageID.1751), the Court is required to view the filings "'in a light most favorable to the plaintiff,' without weighing 'the controverting assertions of the party seeking dismissal.'" *Anwar*, 876 F.3d at 847 (quoting *Theunissen,* 935 F.2d at 1459).

The first prong of the Due Process analysis requires that Mr. Rincione "purposefully avail[ed] himself of the privilege of acting in the forum state or causing a consequence in the forum state." *SFS Check, LLC*, 774 F.3d at 356. Defendants argue that Mr. Rincione's conduct does not meet this standard because his contacts with the state were minimal, were in his capacity as a corporate officer of Crave, and were in response to Plaintiff's initial contacts. (ECF No. 12, PageID.960.) The Court disagrees. Mr. Rincione's communications with Plaintiff prior to the Franchise Agreement are sufficient for a finding of purposeful availment because he had extensive contacts with Plaintiff before entering into the Franchise Agreement, these contacts allegedly contained misrepresentations that form the basis of Plaintiff's claim, and Mr. Rincione knew that the franchisee was located in Michigan.

In support, Defendants cite *Functional HIIT Fitness, LLC v. F45 Training Inc.*, No. 5:22-CV-10168, 2022 WL 17828930 (E.D. Mich. Oct. 26, 2022), *report and recommendation adopted in part, rejected in part*, No. 22-10168, 2023 WL 6367691 (E.D. Mich. Sept. 28, 2023). (ECF No. 12, PageID.961.) That case also involved a franchise dispute. In *Functional HIIT Fitness*, the court distinguished actions that

11

demonstrated purposeful availment from those that were too minimal for the court to reach find personal jurisdiction. For example, form emails that appeared to be sent automatically in response to an inquiry could not be considered purposeful availment by the company's chief revenue officer. *Id.*, 2023 WL 6367691, at *8. In contrast, emails containing financial performance models that were created to induce the plaintiff to enter into an agreement were sufficient to show purposeful availment. *Id.*

Mr. Rincione's communications are closer to the latter than the former. He sent emails with the Franchise Disclosure Document and custom financial models, the alleged tortious conduct (the misrepresentations) occurred in these emails, and Mr. Rincione was aware that they were discussing a franchise opening in Michigan. (ECF No. 15, PageID.1129; *see also* ECF No. 9, PageID.478–479 (alleging that Mr. Rincione provided Plaintiff with personalized estimates before Plaintiff entered the agreement).) Defendants' argument that personal jurisdiction cannot be established because Plaintiff initiated contact is

not convincing. (ECF No. 12, PageID.960–961.) The contacts between Mr. Rincione and Plaintiff were substantial and purposeful.[3]

The second prong of the Due Process analysis requires that Plaintiff's suit "arise out of or relate to the defendant's contacts with the forum." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021) (emphasis omitted) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)). The Sixth Circuit explains that, "[a]t a minimum, this factor is satisfied if the cause of action, of whatever type, ha[s] a substantial connection with the defendant's in-state activities."

---

[3] Mr. Rincione's communications with Plaintiff are not similar to the other cases cited in Defendants' brief. (*See* ECF No. 12, PageID.960–961.) Unlike the defendant in *Kerry Steel v. Paragon Industries, Inc.*, 106 F.3d 147 (6th Cir. 1997), the relationship between Plaintiff (a franchisee) and Defendants (the officers of a franchise) was "more than an isolated transaction." *Id.* at 151. *SFS Check* is also distinguishable; the Sixth Circuit's holding that answering two phone calls cannot be evidence of purposeful availment has limited application to this case because Mr. Rincione's communications were purposeful. *SFS Check*, 774 F.3d at 356–57.

Finally, the Court declines to follow *Luxury Concepts, Inc. v. Bateel Int'l LLC*, No. 22-10793, 2023 WL 3606649 (E.D. Mich. May 23, 2023), to the extent that it holds that purposeful availment cannot occur when an individual defendant only acted in their capacity as a corporate officer. *Id.* at *5. Personal jurisdiction over a corporate officer may be appropriate "when a corporate officer is actively and personally involved in the conduct giving rise to the claim." *Balance Dynamics Corp. v. Schmitt Indus.*, 204 F.3d 683, 699 (6th Cir. 2000). Here, Plaintiff does not claim personal jurisdiction over Mr. Rincione solely because he is a corporate officer. Plaintiff alleges that he made false representations that induced it to enter the Franchise Agreement. (*See* ECF No. 9.)

*AlixPartners*, 836 F.3d at 552 (second alteration in original) (internal quotations omitted) (quoting *Bird*, 289 F.3d at 875). "[T]his is a 'lenient standard,' requiring only that the cause of action have a 'substantial connection' to the defendant's activity in the state." *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 903 (6th Cir. 2017) (quoting *Bird*, 289 F.3d at 875).

Plaintiff's suit plainly "arises out of or relates" to Mr. Rincione's contacts with the forum. Like one of the individual defendants in *Functional HIIT Fitness*, Mr. Rincione is alleged to have "made misrepresentations and fraudulent statements" to induce Plaintiff into entering into a franchise agreement with Crave. *Functional HIIT Fitness, LLC*, 2022 WL 17828930, at *9. These alleged misrepresentations form the basis of Plaintiff's fraudulent misrepresentation and innocent misrepresentation claim, if not more. (*See* ECF No. 9.)

Finally, the exercise of jurisdiction must not "offend traditional notions of fair play and substantial justice." *Ford*, 592 U.S. at 351 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 323–24 (1945)); *Lyngaas v. Curaden AG*, 992 F.3d 412, 423 (6th Cir. 2021). If the first two prongs are satisfied, "then there is an inference that the reasonableness

prong is satisfied as well." *Intera Corp.*, 428 F.3d at 618 (citing *CompuServe, Inc.*, 89 F.3d at 1268). The Court finds that the first two prongs are satisfied; thus, this prong is also fulfilled.

For the reasons set forth above, Mr. Rincione's motion to dismiss is denied.

### ii.   Samantha Rincione

The Court does not have specific personal jurisdiction over Ms. Rincione. Plaintiff argues that Ms. Rincione was also personally and extensively involved in deceiving Plaintiff, and lists the following actions as evincing Ms. Rincione's personal involvement in the conduct giving rise to this claim:

- Stating in a news article that the total investment needed to open a Crave restaurant is "half a million dollars." (ECF No. 15, PageID.1129.)
- Not disclosing to Plaintiff that Plaintiff was actually required to hire Provost as the contractor for the restaurant's buildout. (*Id*.)
- Misrepresenting that she would reach out to Plaintiff's landlord to negotiate its lease default and falsely updating Plaintiff that she was "making progress" with its landlord. (*Id*. at PageID.1130.)
- Falsely promising that Crave would not collect royalty fees, while at least some royalty fees were collected. (*Id*. at PageID.1129.)

- Instructing franchisees to not contact a former franchisee. (*Id.* at PageID.1130.)

Several of Ms. Rincione's actions do not rise to the level of "purposeful availment," and it is not clear that Plaintiff's suit arises out of or relates to Ms. Rincione's listed actions. In short, Plaintiff only describes communications it had with Ms. Rincione after it entered into an agreement with Crave (communications on the lease default, royalty fees, and former franchisees), the *lack* of communication it had with Ms. Rincione (not disclosing that Plaintiff must hire Provost), and communications Ms. Rincione made to the world at-large (statements in a new article).

First, Ms. Rincione's failure to disclose Crave's relationship with Provost and her statements in a news article do not constitute purposeful availment. Plaintiff does not present any caselaw suggesting that not engaging in an action can somehow constitute purposeful availment. Also, Ms. Rincione's statements in a news article have no specific relationship with Michigan.[4] (ECF No. 20, PageID.1756–1757.)

---

[4] In addition, Plaintiff alleges that the news article was published in September 2023 (ECF No. 9, PageID.493), nearly three years after Plaintiff entered into the Franchise Agreement. (*Id.* at PageID.479.) Given the timing of the facts in

With respect to her communications with Plaintiff regarding the lease default, royalty fees, and former franchisees, to the extent that these can be considered purposeful availment, Plaintiff does not allege that these statements induced Plaintiff to enter into the Franchise Agreement. *See Functional HIIT Fitness, LLC*, 2022 WL 17828930, at *9; (*see also* ECF No. 20, PageID.1757–1758 (stating that Ms. Rincione's involvement is "a little more after the fact" and that her misrepresentation that she would reach out to Plaintiff's landlord was related to damages, not a specific count).) As set forth in the complaint, Plaintiff brings suit against Defendants because Plaintiff was allegedly induced to enter into the Franchise Agreement. (ECF No. 9.) As such, Plaintiff's suit does not "arise out of or relate to the defendant's contacts with the forum." *Ford Motor Co.*, 592 U.S. at 362.

For the reasons set forth above, Ms. Rincione's motion to dismiss is granted.

---

this case, it is unclear how these statements could relate to Plaintiff's causes of action. *See Ford Motor Co.*, 592 U.S. at 362.

### III.    Mr. Rincione's request to compel arbitration

In Defendant Crave Franchising, LLC's motion to dismiss and compel arbitration, it requests that the Court consider "whether Plaintiff must also arbitrate its claims against Ms. and Mr. Rincione." (ECF No. 13, PageID.1017–1018 n.7.) Because Ms. Rincione has been dismissed from this case, the Court will only consider this request with respect to Mr. Rincione.

At the May 9, 2024 hearing, the Court ordered supplemental briefing on this issue. (ECF No. 20, PageID.1761.) Both parties timely filed their briefs. (ECF Nos. 21, 24.)

### A.    Legal Standard

"[A]rbitration is a matter of contract," meaning "courts must 'rigorously enforce' arbitration agreements according to their terms."[5] *In re StockX Customer Data Security Breach Litigation*, 19 F.4th 873, 878 (6th Cir. 2021) (quoting *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013)). "[P]arties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of

---

[5] Both parties agree that the Federal Arbitration Act ("FAA") governs the arbitration provision. *See* 9 U.S.C. § 2; (ECF No. 13, PageID.1004–1005; ECF No. 16, PageID.1387.)

'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Id.* at 878 (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67–68 (2019)). In those situations, the agreement must contain a provision that clearly and unmistakably delegates such questions to the arbitrator. *Id.* at 879–80.

Even when the arbitration agreement delegates questions of arbitrability to the arbitrator, the Court still has a role in determining whether arbitration should be compelled:

> *First*, we resolve any challenge that pertains to the *formation* or *existence* of the contract containing the delegation provision. If a contract exists, we proceed to step two.

> *Second*, we decide any remaining *enforceability* or *validity* challenge only if it would "affect the [delegation provision] alone" or "the basis of [the] challenge [is] directed specifically to the [delegation provision]."

*Id.* at 880 (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 71–72 (2010)).

## B.    Analysis

On December 7, 2020, Plaintiff entered into a franchise agreement with Crave. (ECF No. 13-2, PageID.1088.) The Franchise Agreement was signed by Darrell Olds as Principle of Plaintiff, and Samantha Rincione

19

as CEO of Crave. (*Id.*) It contains a provision that delegates to an arbitrator the merits and also the arbitrability of any dispute:

> [A]ll disputes, claims and controversies between the parties arising under or in connection with this Agreement or the making, performance or interpretation thereof (including claims of fraud in the inducement and other claims of fraud and the arbitrability of any matter) which have not been settled through negotiation will be settled by binding arbitration . . . .

(ECF No. 24-2, PageID.2220.) Additionally, the Franchise Agreement states that "the [arbitration] proceedings will be conducted under the commercial arbitration rules of the American Arbitration Association." (*Id.*) The Sixth Circuit has held that "the incorporation of the AAA Rules (or similarly worded arbitral rules) provides 'clear and unmistakable' evidence that the parties agreed to arbitrate 'arbitrability.'" *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 846 (6th Cir. 2020) (collecting cases). Neither party disputes that the Franchise Agreement clearly and unmistakably delegates issues of arbitrability to the arbitrator.

Moreover, neither party challenges the formation or existence of the Franchise Agreement. (*See* ECF Nos. 16, 21, 24); *In re StockX*, 19 F.4th at 880. Thus, the Court must "decide any [] enforceability or validity challenge" directed at the delegation provision. *Id*. If the delegation

provision remains unaffected, the arbitrator, not the Court, must determine whether Mr. Rincione can enforce the arbitration agreement against Plaintiff. *Swiger v. Rosette*, 989 F.3d 501, 507 (6th Cir. 2021).

In its response to Mr. Rincione's supplemental brief, Plaintiff appears to contest the validity of the delegation provision, though this is unclear to the Court. (ECF No. 24, PageID.1948 ("Plaintiff is contesting the validity of the delegation as clause, as Plaintiff has contested the validity of the arbitration clause, including the delegation clause.").) Plaintiff repeats the arguments it made in its response to Crave's motion to dismiss and compel arbitration; namely, that the delegation provision (1) "lacks mutuality of obligation," (ECF No. 16, PageID.1395) and (2) is preempted by the Michigan Franchise Investment Law ("MFIL"). (*Id.* at PageID.1400.)

The Court already rejected these arguments. (ECF No. 19; ECF No. 20, PageID.1737–1738 (determining that a challenge to the arbitration provision based on MFIL is moot because Defendants agree to arbitrate in Michigan); *Id.* at PageID.1740–1743 (rejecting Plaintiff's mutuality of obligation argument because Michigan's mutuality of obligation requirement pertains to the entire contract, not to individual

provisions).) Because Plaintiff does not successfully challenge the delegation provision, the arbitrator, not the Court, must decide whether Mr. Rincione can compel arbitration against Plaintiff.

Plaintiff argues that "given that Plaintiff challenges the validity of the delegation clause, it is proper for the Court to consider the enforceability of the arbitration provision between Plaintiff and [Mr. Rincione]." (ECF No. 24, PageID.1949; *see also id.* at PageID.1947 ("The Court must determine whether the claims between Plaintiff and [Mr. Rincione] are referrable to arbitration, regardless of the Delegation Clause.").) This is wrong. Plaintiff appears to misunderstand the standard of review required in motions to compel arbitration.

The Court may only consider the enforceability of the arbitration provision between Plaintiff and Mr. Rincione if Plaintiff's challenge of the delegation clause is successful. *See In re StockX*, 19 F.4th at 880 ("'[I]f a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator' and that delegation provision stands, 'a court may not decide the arbitrability issue.'") (quoting *Henry Schein*, 586 U.S. at 70). When there is a valid delegation provision, challenges to the applicability of an arbitration agreement between a signatory and a non-

signatory are resolved by the arbitrator. *See Swiger*, 989 F.3d at 507; *Blanton*, 962 F.3d at 848–49.

For the reasons set forth above, Mr. Rincione's request to compel arbitration is granted, and the case is stayed as to Mr. Rincione.[6]

## IV. Conclusion

For the reasons set forth above, Defendants' motion to dismiss for lack of personal jurisdiction is GRANTED IN PART and DENIED IN PART (ECF No. 12), Defendant Samantha Rincione's request to compel arbitration is DENIED AS MOOT, and Defendant Salvatore Rincione's request to compel arbitration is GRANTED. (ECF No. 21.) Defendant Samantha Rincione is dismissed. The case is STAYED as to Salvatore Rincione.

IT IS SO ORDERED.

Dated: September 18, 2024          s/Judith E. Levy
     Ann Arbor, Michigan          JUDITH E. LEVY
                              United States District Judge

---

[6] Generally, district courts must stay actions pending arbitration because "a [] dismissal order undercuts the pro-arbitration appellate-review provisions of the [Federal Arbitration] Act." *Arabian Motors Grp. W.L.L. v. Ford Motor Co.*, 19 F.4th 938, 941–42 (6th Cir. 2021). Dismissal is still "permissible" in certain situations, such as when the "dispute is moot" or when "both parties request a dismissal." *Id.* at 942. The Court previously determined that a stay was appropriate for Crave (ECF No. 20, PageID.1761); thus, a stay is appropriate for Mr. Rincione as well.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 18, 2024.

s/William Barkholz
WILLIAM BARKHOLZ
Case Manager